I asked our division is now in session. Honorable Justice Jesse G. Reyes. Morning, ladies and gentlemen, please have a seat. People v. Allen. With counsels who are going to argue in this manner, please step forward. And please identify yourselves for the record and the party that you're representing. Good morning, Your Honors. Jonathan Yee, State, from the State Appellate Defender, on behalf of Mr. James Allen. Good morning. Bethany Pfeiffer, Burns, an Assistant State's Attorney, on behalf of the people. Okay, great. All right, so 15 minutes apiece. You want some time for rebuttal? I'd like to hold about two minutes back. Okay, great. All right, thanks. All right, if you're ready to proceed. And can I, before you even start, because I know there are a lot of issues you could talk about, I want you to talk about the residential burglary jury instructions, for sure, and the issue of the State's concession. I believe those are my two first issues, Justice Ginsburg. Oh, good. Please engage. May it please the Court. At the end of this trial, Judge Burns apologized to the jury, telling jurors that this is not what the criminal justice system is all about. That jury had just watched a breakdown of the system where Mr. Allen decompensated in his closing argument. There are checks and balances in the system that prevent this kind of mental illness from taking over a trial. A number of issues are raised in the briefs where those checks and balances failed in this case. In particular, I would like to be able to talk to you about a couple of those issues, one involving this odd use of a non-pattern jury instruction on the very familiar offense of residential burglary. And I'd also like briefly at the end to talk about this issue of standby counsel because of some of the particular facts of this case. But I know this Court has had particular interest in issue three of the briefs, which is the lesser-included offense issue. And it's a fairly technical issue, and I do think that the supplemental briefing helps sharpen precisely what is at stake here. Very briefly, our position is that the State's argument should be rejected because it leads to a greater penalty for a less serious offense. So which argument? So you're going to the one act, 20 crimes? Yeah. The issue three of the briefs on whether, and this gets to this Court's second two questions about April 4th order, as to whether aggravated criminal sexual assault is a lesser-included offense of home invasion predicated on criminal sexual assault. So aggravated criminal sexual assault is 11-1.3082. The simple criminal sexual assault is 11-1.20. That's correct. So we have home invasion predicated on criminal sexual assault, and then we have these two aggravated criminal sexual assaults, right? That's correct, Your Honor. So with the criminal sexual assault, which is the predicate crime for home invasion here is charged, it does not require bodily harm, correct? As charged in this case, it did not require bodily harm. But the aggravated criminal sexual assaults, as charged in this case, do require bodily harm, correct? Mm-hmm. And so how is this a lesser-included when bodily harm is the extra element and criminal sexual assault is not? I think the supplemental briefing does help clarify this, that our position is, first, how do we define at what tier of detail we say is an element of the home invasion charge? And what happens is once we start applying these rules of statutory construction, this Court should avoid the circumstance where my client would have actually gotten a lesser penalty had he been charged with home invasion predicated on aggravated criminal sexual assault. The sub-briefing indicates it's a very specific common application of the rule that this Court shouldn't interpret the statutes to create an absurd or unfair result. And the circumstance where someone who is convicted of home invasion predicated on mere criminal sexual assault gets a consecutive sentence, an additional class X sentence, whereas someone convicted of home invasion predicated on aggravated criminal sexual assault does not, can't be what the legislature intended. Isn't that the State's prerogative to charge it that way? Well, my argument would be that first we look at what the legislature did in terms of enabling what the charges are. And, sure, the State could charge it that way. But it would be an error of statutory construction to say that because the State charged it that way, because they didn't include what would be an already proven superfluous element in one charge, that my client would have to serve an additional consecutive class X sentence. Isn't it fairly established law that it must be impossible to commit the greater offense without committing the lesser offense? That is established. But I think Reveles-Cordova doesn't establish is at what level of detail do we assign what is the greater or lesser. There is a longstanding split as to what exactly the elements of this offense were prior to Reveles-Cordova. And there's always no law since then. So in the Reveles-Cordova case that you're relying on, that's a scenario where home invasion was predicated on criminal sexual assault, but then we had the same criminal sexual assault out here as a separate crime. And so that case is saying, no, we can't do that. And they kind of merge it. But here it's that criminal sexual assault. I would submit that Reveles-Cordova didn't resolve this particular circumstance. And we also have the Richardson case that's in the opening brief that talks about aggravated. And aggravated creates a merger. It's this oddity that if aggravated and aggravated, creating a lesser sentence than aggravated and mere criminal sexual assault alone. And, Your Honors, I'd like to move to what was this Court's first question in that order about plain error regarding the definition of residential burglary. And, Your Honor. Before you do that, so staying on the one act, one crime issue, this was not raised in your post-trial motion, correct? No, Your Honors. It's raised as plain error in the briefs. And in less than two weeks, that's a second-pronged plain error. And, Your Honors, the State needed to prove the specific intent to commit a theft every time that Mr. Allen opened one of those doors. The problem with that in this case is its own witness was testifying that Mr. Allen was clearly psychotic when he was nakedly wandering the hallways. Isn't that a jury question, counsel, especially in the face of two State expert witnesses testifying that he's not insane? It is a jury question. And the jury was badly misinstructed here when they were given a version of defense that doesn't even exist in Illinois law. But before we reach that, I think it's easy to resolve this as a sufficiency issue. Because the State simply failed to prove beyond a reasonable doubt what Mr. Allen was thinking when he was opening those doors. He didn't dispute that he didn't have permission to go into all of these several different condominiums. He entered them without permission. None of the residents invited him in or allowed him to stay. So is there any real risk of the jury convicting him based on an unauthorized, you know, an uncharged, unauthorized Romanian theory? Because there's two theories of Reznor, right? And doesn't he meet the criteria for both? As charged, it required the State to prove his specific intent at the moment he opened that door. In closing argument, the prosecutor says, ignore that part of the instruction, and says, quote, tells the jury it doesn't matter what his intention was when he walked in. As in, ignore the lawful part of the instruction. What matters is that sometimes while he was in there, he decided the intention occurs to him to take those belongings. Where the prosecutor expressly tells the jury, ignore the lawful part of this instruction, the one that talks about specific intent at the time of entry, the only way we charged him with residential burglary in this case, and instead convict him on a non-existent Romanian theory, something that isn't even an offense of burglary under Illinois law. So he doesn't actually have to steal it, right? It's like unauthorized theft. It's predicated on theft, which is exerting unauthorized control. Well, Your Honor, at the moment he opened that door, at the moment he breaks the close under burglary law going back to Kelly in 1916, he would have had to have the specific intent to commit theft. Having specific intent to do some kind of misdeed isn't enough because the State decided to charge him with the specific intent to commit theft. And my client, and it's certainly second-pronged plain error to commit him of not only an uncharged offense, but of something that isn't even an offense of burglary under Illinois law. I have a question. So when he first arrived in the lobby of the building, what was the conversation? Do we know what the conversation was between him and the security individual? The State chose not to call that doorman, Your Honor, so there's nothing in the record as to what that conversation was other than there's silent video that he somehow apparently talks his way past while naked and stammering and off the street. But it's clear that there was no forced entry at that time. There's no forced entry at that time. And then he ends up in the building and he's testing various doors. And he goes from the fourth floor to the fifth floor up to the ninth floor. He ends up, you know, this is no cat burglar caught in the act doing something valuable. State's Exhibit 1, which is the officer's body camera video, shows you the moment of the arrest. He's sitting naked on Brian Moyle's couch wearing, you know, he's not running off with anything, wearing sunglasses and fainting as if he's playing guitar he picked off the wall. And then he tells the officers that he owns the building or it's his building. And then even before that, he's knocking on doors in the hallway. Tim Parent testifies that he was loudly knocking on the doors, demanding to see where his 5-year-old daughter was. This is not coherent. This is not some detailed plan to go into units and take things. And he never takes anything of actual value. He exerts control over various items, including consuming wine from two different apartments, right? So he's just laid out. I don't think there's direct testimony on him actually consuming the wine. He does have a wine bottle at some point. It's not clear whether it was empty or if he ever actually opened it or if he was fainting. That aside, I think the Bruce case from 1985 is an example here. That was somewhat a drunken person who wandered around Marshall Fields at Christmas time for a while and slept for a while, woke back up. And, you know, when he's being escorted out, they catch that he's wearing a bunch of clothing with Marshall Fields tags on him. And that case found that the mere fact of a taking after the fact doesn't prove what the intent is at the time of the entry. And there's more cases to that effect in the briefs. One common denominator among a lot of these cases is that the defendant has some indication of intoxication at the time, that he's somehow drunk. And the State's theory in this case was that my client actually had substance abuse psychosis. Now, maybe that defeats the insanity defense for some of the other elements, but the problem is it also defeats the State's art of ministering why my client would have had specific intent to plan a theft at the moment of each entry as opposed to intent to do some kind of mischief, which isn't enough. I know that you think that we can resolve this on the sufficiency issue, but I'm really concerned about the varying ways that residential burglary was explained to the jury. And so I want you to talk a little bit about that, because I know the judge injected into the case an issue that was not supposed to be in the case. And then I think he, and I may have this wrong, I think he stated it correctly and then gave the jury the wrong instructions. And then the State said ignore those instructions. And so I want you to deal with the peculiar facts of this case, along with this inconsistent and incorrect admonishments to the jury. There's sort of a number of categories of errors that happen with this jury instruction. And it's the court suggesting the State jumps on it and then almost abandons how he charged it, how they originally charged him by closing argument, which is a non-existent offense if the jurors did as the prosecutor said and found him guilty on a remaining theory. It's a constructive amendment because the grand jury never came back with any kind of theory as to any kind of indictment on remaining burglary. It only ever returned anything. It came back with a charge of unauthorized entry burglary. And there's no, there's no offense in Illinois law, burglary by remaining after an unauthorized entry. And instead of doing two counts, which would be how is then done for each one, if they had come back with a remaining theory, instead it's duplicitous instruction, which has the or right in the middle of the instruction. And there's, and when that happens, we have jury unanimity problems because if six jurors said it's a remaining theory and six said it's his intent in entry, then he doesn't have a unanimous jury finding him guilty. And that additionally is another cause of second-point plain error. But didn't the prosecutor argue that the and, like, in effect, holding themselves to a higher burden, the first, first the prosecutor gave him, gave the judge the instructions, what you're saying are the correct instructions, right? The, she took him the written instructions. The judge, sua sponte, takes out his statute and says, I'm going to use the, I'm going to instruct them consistent with what is written in the statute, which phrases it in the disjunctive, you know, with the or. But then the written instructions that were given to the jury are not the same, are the written instructions the same as, like, what the judge told the state and defended it to go and do? Yeah, I think so. The written instructions are the ones that are wrong. Yeah, my understanding is. And the oral ones are correct. The judge only instructs the jury and that oral instruction would have been correct. He does it before a closing argument because of the circumstances in the courtroom. Okay. And then. So the written instructions are the ones that are in the statute that are two different areas. Yeah, the written instructions have the first proposition of that the defendant knowingly and without authority entered or knowingly and without authority remained within the dwelling place of another. And that's the hybridized version. And the state argues and, which is closing argument, no objection. The state's argument is that it doesn't matter what his attention was when he walked in. In other words, ignore that part of the instruction without intent at entry. And maybe jurors tend to ignore that part of the instruction, but because we can't know, that standard from Hartfield comes in and it has to be second-pronged plain error. And. And would the jurors poll at the end on each aspect of what was charged? I cannot recall, only Justice Reyes, if it was charged by charge on the jury poll, but they will not poll the different theories in terms of each residential burglary. As they never have been in my 20-plus years of being in the field. They don't ask on what theory of the offense you found the person guilty. Were there any questions that the jurors posed regarding. No questions at all. This jury had just seen my client essentially break down during closing arguments. And, you know, this is something that comes, well, I see my time is out. It comes up. That first issue as to why he might have needed standby counsel in this case is the system broke down. The jury was out, I think, maybe two hours with no questions at all. Given the breakdown that they had seen in the trial process, I think a conviction would have been, we assume jurors follow their instructions in this court, but I can't say that this jury was going to follow its instructions after watching the spectacle that happened when the court lost control of proceedings here. Thank you, Your Honor. I do want to briefly mention the standby counsel issue, which is 1-3. I am acutely aware that this court hasn't reversed a conviction on standby counsel since the Gibson decision in 1990. But there's never a case where those factors point in the defendant's directions. It is in this case, given that it's a multi-indictment case involving a wide range of offenses, different kinds of expert testimony, and a client who is actually asking the State's expert witness to increase his antipsychotic meds during trial. I don't think there is a doubt that my client is mentally ill and one of those gray area defendants in some sense, even if we're not quite sure. Even if the experts never quite put their finger on exactly what that mental illness is. But given the breakdowns of this case, this issue wasn't raised in defendant's post-trial motion. Didn't he forth it? It's raised as plain error in the briefs. I agree it wasn't raised in the post-trial motion. First, I'd suggest that, and this is in the reply brief, that Creegan exception, because it's a constitutional issue and it's one that the court decided, he doesn't actually have to include in the post-trial motion to be preserved. Second, it's taken from a plain error. Are you arguing it as a constitutional issue or are you saying that the trial judge somehow didn't comply with the rule so that the waiver of counsel was valid? I do think stand-by counsel is a constitutional issue when it's necessary for my client to be able to enjoy his right to self-representation. So you're not contesting the admonishments? So you're not contesting the admonishments or the quality? The judge followed the statute, right? We're not raising the error under the Illinois Supreme Court rule. Issue one does raise this question of when a defendant who's going per se and raising an insanity offense needs to be told that he's likely to be locked up even if he's acquitted. It does raise that issue. Isn't that an issue that the legislature should address and make a law on that, about whether they should be admonished or whether it's even allowed for a defendant claiming insanity to go forward without any counsel at all? Your Honor, it's a constitutional rule. And the constitutional rule says in order to have eyes open when waiving counsel, a court has to look at the particular facts and circumstances of this case. And at this point, the insanity defense was already on the table. Everybody knew it was happening. It had been noticed. My client had already had an expert on his side, a proffered. And the history of his mental illness was known because there had been multiple fitness proceedings going on. In this case, I do think Judge Burns had to say if you're going alone and pursuing an insanity defense, you do understand that you're probably going to be locked up for a very long time. Can I – I have – I think I have two questions. One is did your client ever actually ask for standby counsel? Did he – if he did it once or twice? I haven't found it in the record that he actually asked for standby counsel. And I think my other question is in admonishing a defendant about their right to proceed, per se, I have never seen a case that says you have to also admonish them if they're claiming insanity of the pitfalls of that and the possible ramifications. So are you asking us to make that the rule? I – on Justice Lampkin's second question, I am asking you to make it the rule, is there's very little out there in terms of admonishment and insanity. We do know if a client's going to waive an insanity defense that they have to admonish. That's getting from some of the other cases in the brief. We do know that if a client does have an insanity defense, it's theirs to raise or lose. But there just isn't specific law on this question. But the general constitutional rule is that the defendant has to be admonished as to the consequences of what the trial will be. And given what Illinois' consequences are, that admonishment is more secure. The judge can't force counsel or standby counsel, right? The judge can force standby counsel. It's McCaskell v. Wiggins, Your Honor. So in this case, the defendant had many kind of disparaging remarks about the public defender's office. He worked with different public defenders. It wasn't working out. So even if standby counsel had been appointed, it would have been the PD's office and the likelihood of the defendant tolerating that is, what, negligible? The court has discretion to do it even for an intolerant defendant. And this goes into Justice Lampkin's first question. That's what I need for an answer. Which is, he did ask for standby counsel. He didn't use the word. He starts out requesting to go pro per, which he understands is having to be some kind of assistance of an attorney. It's a misuse of the phrase because he's a mentally ill pro se defendant, but that's what he understands. He asked the court, when the court says, when Judge Burns says he has discretion not to appoint standby counsel, my counsel gets upset and talks about how that discretion would be a violation of his Sixth Amendment rights because clearly he wants to help a standby counsel. He goes on to say why he wants to help a standby counsel, which is because he plans on testifying and there's the awkwardness of a defendant not having a counsel there to ask questions. And he also complains about Judge Burns holding him to the standards of an attorney on such matters as these rules of evidence and the hearsay problems throughout trial. A lot of my clients' outbursts come because he just doesn't understand how to lay a foundation for evidence or when to object to hearsay. And those are exactly the kind of things that standby counsel could have made a difference with. Now, Your Honors, thank you, Your Honors. I actually reversed my client's conviction. Sorry. Any other questions? No? Okay. Thank you, Counsel. Good morning. Good morning. May it please the Court. Counsel. Again, my name is Assistant State's Attorney Beth Pfeiffer Burns. And I wanted to first address, begin with the One Act, One Crime analysis and to answer the Court's question of whether or not aggravated criminal assault, sexual assault was the predicate for the Lester-included offense of home invasion. Okay. And I want to stop you before you argue it to ask because in the initial brief, you conceded that there was error. And now you're changing your mind with the supplemental brief. What is the consequence of the concession? Have you forfeited it, the ability to change your mind? Well, the order, our request was respectfully presented to the Court. And the order that was entered, I would say respectfully allowed us to withdraw that. But I understand, Justice Lampkin, your position about forfeiture. However, I think, well, my position would be that forfeiture aside, what's most important is getting it right. And I know this Court does not have to allow us to withdraw that. And it is with the grace and respect that we are happy that the Court allowed us upon a second look at the concession as an error. And it's an error in my brief. And it's an error that I accept. And it's an error that happens. And so, but I, in the interest of getting it right, which I think is more important than my drafting error, and in the interest of getting it right is what we wanted to offer the Court, is the law that supports the position that we have moved to. And the law that supports that position is fairly well laid out in the one act, one crime analysis that Justice Van Tine was recently articulating. And it is laid out in King. And we start with that two-step analysis, which is first deciding whether or not we have a single act or multiple acts. And next we move to whether one act is a lesser included of the other. And in this case, we agree that we have multiple acts. And so the next step, obviously, is to go and use the abstract elements approach. And when we do that, we look at the statutory elements, as Justice Van Tine was discussing. And when we look at the statutory elements of home invasion with criminal sexual assault as a predicate, we see that aggravated criminal sexual assault has an additional element of bodily harm that home invasion predicated on criminal sexual assault does not. So just looking at the statutory elements, we can see that multiple convictions are proper. What the defendant is asking this Court to do, although the defendant talks about the law within Ravel as Cordova, what the defense is asking this Court to do is to consider all of those offenses in home invasion in A6, all of those offenses as a group. And so then violation of one is as a group. And that has never been done. It's never been done. Van Tine and Ravel as Cordova advises that those offenses should be treated as separately prescribed offenses. In Paragraph 20 of the Ravel as Cordova opinion, defense counsel calls it dicta. But what it is is the Supreme Court's giving instruction for lower courts and practitioners how to handle this situation when you have all of those separately prescribed offenses that they should be treated as separate violations of home invasion. And in the Ravel as Cordova case, it was the same offense that was the predicate for home invasion. Correct. Whereas here, it's a different offense. Correct. And so we have to, does Cordova say how far to drill down into parsing into these subsections? So counsel for defense would have a stop at 6, correct? A6. But that's the guidance that Ravel as Cordova when it says that the offenses in A6 should be treated as separately prescribed offenses. And so when Ravel as Cordova, it uses that and then it cites to the Supreme Court case of Waylon. And in Waylon, they had a similar situation and they discussed that it was not, it could not be a matter,  could not have intended that. And so the Ravel as Cordova Supreme Court looked at that and cited to Waylon and brought that analysis to our situation and our case where we have in A6 those multiple sex offenses. And Ravel as Cordova, that language and the instruction from the Supreme Court I would submit is not dicta, but it's guidance for that situation that was not present in their fact pattern, but more than likely was going to come along. And so their guidance was to treat it as separately prescribed offenses. And so when we do that, we can see that aggravated criminal sexual assault again is aggravated criminal sexual assault and home invasion based on criminal sexual assault that multiple convictions are proper. Now, of course, those offenses do share the common act of criminal sexual assault where we know that that's not a problem because of the cases of Coates and Segenza-Brito and Rodriguez where we know that a person can be guilty of two offenses that share a common offense as both of those. So then the next thing that talks that the defense has brought up and that has been part of the discussion here was a fairness issue. And the goal is to hold a defendant responsible for all of the crimes that he committed. And home invasion is a serious offense. And it involves the sanctity of the home. And so if we did charge home invasion based on aggravated criminal sexual assault and then say one juror decided that there wasn't enough evidence of bodily harm, does that mean that the defendant wasn't guilty of home invasion? No. So it is proper for the state to be able as a... Well, if you charged home invasion based on aggravated criminal sexual assault, that in and of itself has a bodily harm element. So this isn't a case where you charge home invasion based on ad crim sexual assault and then also have the ad crim sexual assault charges out there. That's where one cancels out the other. That's correct. And so what I'm talking, what I'm speaking more to, I'm sorry, I might have... I think you're talking about charging issues. Yes. And I'm talking about the idea of whether or not it's fair that we didn't charge the aggravated. And what I'm saying is, as I think Justice Van Tine articulated earlier, is it is the state's prerogative, but it is proper to charge and to put to the jury a charge that requires the least amount of proof in order to hold a defendant accountable and responsible for the offense that he committed. And so it was proper to put to the jury the offense that required the least amount of proof. I also wanted to discuss the residential burglary and the instruction that, Justice Lampkin, that you were talking about. And the question that was put to us is whether there was a serious risk that the jury incorrectly convicted the defendant because they didn't understand the law. And the answer is no. And the reason that I'm saying the answer is no is because the error in giving the entering or remaining alternative in a residential burglary didn't involve a fact question that was at issue in the case. I mean, it wasn't charged that way. Correct. So the remaining part... So how is it proper to instruct the jury that the defendant could be convicted of remaining in the condo when the state has never charged that? Right. I'm not saying that it was proper. And in my brief, I do say that it was an error. But the question that we have is, is it a reversible error? Because it wasn't... Can I add? You're saying it wasn't a reversible error. Counsel raised the issue that came... The first thing that came to my mind when I read it is 12 jurors. Six could be convicted because they thought he had the intent to commit the theft when he came in, and six could be convicted because they thought, well, maybe he just wandered in and then once he was inside, he decided to steal. And so how do we know... You know, how can we justify upholding a conviction when the jury not only got the... I don't want to say insane, but I'm saying instructions, and then got an oral instruction that's absolutely the opposite. And then the state argues something that they should not have been arguing. When I read it, I was, oh my gosh. Sure, I understand what you're saying. What I would offer to that question is, there was no evidence to suggest that he had authority to enter or remain. So there would be nothing to base the jurors' verdicts on. So when the jurors... See, I've been reading too many cases recently. I just had a case with a similar issue as to whether or not the defendant was allowed in and then formed the intent. So that's going through my head. In this case, I don't think there was any testimony. And one of you can correct me if I'm wrong. Was there any testimony from the defendant that he was let in? No. He did not contest that he had no authority to be there. And the reason he explained to the jury why he didn't contest that he didn't have any authority, he explained to them that he was admitting what happened because that was the only way he could have done it. Could he have introduced the security guard as a witness during the trial? Wouldn't that have maybe alleviated some of these questions? Could it be because he's a fired security guard and you have to put the witnesses on who are the strongest for the state at that point? He surreptitiously went past that security guard, but nevertheless... But there appeared to have been some type of conversation based on the record. There appeared to be he walks up to the guy and they have a conversation and next thing you know he goes in. I mean, it's...right? That appears to have occurred, but whatever he said doesn't matter in terms of whether or not he had authority to enter each specific condominium and remain. And he didn't dispute that he didn't have any authority. Each of those victims woke up to anyone's worst nightmare of having a stranger in your home. And in the instance of the woman who was sexually assaulted committing an entirely horrible act. But even within those other units the violation of having someone enter your home while you're asleep and waking up to that person is not something that any of those other individuals I'm sure will get over soon. But the whole point of the error in this instruction, I would refer the court to the error that was in Jones. Tinkler is a case that had this exact same error presented to it and to resolve Tinkler the court in determining that it was an error in a serious case. That was an attempt murder case and the error was in the murder definition. The murder definition instruction, the attempt murder, again it was conflicting instructions. So the attempt murder instruction was correct, but then when you have an attempt murder offense you have to give the definition of murder. So your attempt had the specific intent in it in Jones and then the murder definition had the less culpable mental states that murder could be committed with a strong probability and knowing. So in Jones they decided that that error in jury instructions did not always justify reversal when the evidence of the defendant's guilt is so not guilty. So when we take that analysis in Jones and we look at, and so in Jones they didn't reverse it. Even on that attempt murder, even though it was that error in the definition instructions. And the reason they didn't reverse it is because the evidence of that offender's intent was so grave. That's the case where the victim was shot in the head four times and then received a buck shot to the back. And so even though they had that error in the jury instructions, the reason they didn't reverse it is because that wasn't what was at issue. What was at issue in that case is whether the 15-year-old or the adult did it. So even the defense counsel in that case, basically as the Jones opinion says, conceded that yes, that was error, but conceded that that would be sufficient for an attempt murder charge. But here the defendant is not conceding intent right from the very beginning of the trial. He never conceded intent, right? And so isn't this very different where the whole part of the instruction hangs on intent and yet we have given it three different ways? So what I would say is the error here is on the action. The action of either entering or remaining. The specific intent to commit a theft, that was proven. The jury resolved that. We can call it a hodgepodge of items, but in Jones they refer to the case of Green where the items that were taken were stakes. So the items and their value, hodgepodge, that's not what's important. What was taken and moved in that final apartment, the wallet that was moved from one place to another, what all of that is, is circumstantial evidence of his specific intent. And that is an issue that was resolved by the jury. So what Justice Van Tonk, if I can try to... But was it resolved by the jury at what point, though? We don't know if it was resolved by the jury when he's remaining in the apartment, or was it resolved by the jury as to how he entered the apartment and how he was in his hut? Well, what I would submit is what the jury, when the jury went back to that jury room, this was not the issue they were asked to resolve. It isn't, obviously, we assume the jurors follow the instructions. And again, the instructions were... How do they not reach the issue of intent, though, if it's, whichever way it was instructed, intent was something that they have to take into account if they're following the law. The intent to commit a theft, I would submit, is proven by the circumstantial evidence that I was talking about as the items. But when we're talking about his mental state, and we're talking about whether or not he could be absolved of the crimes because of his position that he was insane at the time of the offense, and to get to that, which is what the jurors were asked to resolve, to get to that, the defendant himself admitted to committing all of the offenses because he wanted to get to the point of being not guilty by reason of insanity. What about counsel's argument of the state's attorney telling the jurors that intent doesn't matter? That was part of the error. But what we're focused on is whether or not the error was reversible. And I would submit that there's support in the law of Jones and other cases that not every error is reversible. In any of those cases, were there three different versions of a jury instruction given and a prosecutor arguing that one of the elements didn't matter? I can't speak to that. But, and I'm not saying that jury instructions don't, I mean, the instructions matter. Our system, we rely on instructions. And that's why we have acknowledged that there was an error here. I can't defend that. And I believe in the record there was no question from the jurors once they went in the jury room about instructions, correct? Correct. But, we're just addressing magnitude at this point. Sure. And it is an error. But the question that, in the end, the bottom line is whether that error is reversible. And I would suggest that the error in this case is not reversible because of the prior cases that support the idea that not every error in jury instructions is reversible when the evidence of the defendant's guilt is so clear and convincing that a jury could not reasonably have found him not guilty. And I think in this case, there was not really a chance, and the defendant didn't even expect for a straight up not guilty. And that's what we're, that's what that speaks to, is could the jury reasonably have found the defendant not guilty? That's not the question that was put to them. That, sure, that was an option. But that was one of four options. Guilty but mentally ill, not guilty by reason of insanity, guilty or not guilty. And in this case, when the defendant admitted to crimes, and because it was necessary for him to get to one of those other two alternatives, I would submit that this is that odd case where essentially the commission of the crimes is assumed or presumed. And in case, unless the court has any other questions, you only, any other questions? No. No. Okay. Thank you. For these reasons, and those stated in our brief, we respectfully request that this court affirm defendant's convictions and sentences. Thank you. Rebel? Yes, Your Honor. The defendant does not weigh his right to prove beyond a reasonable doubt on every element of the offense by raising an insanity defense. In fact, jurors are told he doesn't weigh that right. The full jury instruction on this is that the burden remains on the State to prove beyond a reasonable doubt each of the elements of the offenses. And that is why the jury is still instructed on those elements. The notion that because this was an insanity case, my client had no right to be proven beyond a reasonable doubt should be rejected by this court. And once we reject that, we get to that question of what was he thinking at the moment of each entry. And sure, I could imagine if the State made an argument that on each of those entries to each of those units, it was overwhelming that his intent was to commit, he had the specific intent to commit a theft, it could be harmless. But it's obviously not when he's wandering the hallways naked, shouting about looking for his daughter, and the State's own experts testifies that he's doing that as part of substance abuse driven psychosis. Now, Your Honors, on the lesser included offense issue, there is a standard for this court to deal with what happens when a party concedes and then tries to take this concession back. It is that it's only allowed when necessary for a just result and to maintain a uniform body of precedent. And as Mr. Allen argues in that supplemental brief, that standard isn't met here because the end result of creating a new path for the — for States to overcharge, to get a lengthier sentence imposed on a defendant by charging a lesser offense is an unjust result. It's a disproportionality that would be new to Illinois law. And it's not necessary to maintain a uniform body of precedent because there's no precedent out there on this specific combination of offenses. Instead, this court is left to parse what guidance might be in one sentence of paragraph 20 of Reveille's Cordova. And so given the uncertainty on this issue, the State should be held to its initial concession. And I'd be happy to answer any questions. I just have — I have — I may have two, but for sure one. Even if the — if we don't allow the State to take back their concession, we can — we can ignore their concession and do what we think is the correct thing. There's a standard for that, which is it's — there's a few of the cases cited in that supplemental brief, and it goes back 50 or 60 years, on it's appropriate when necessary for a just result and to maintain a uniform body of precedent. And I would submit that in order to say we overlook the forfeiture here, the court would have to find that that standard met. And as we argue in the supplemental brief, that standard is not met. Thank you, Ron. And what — just to get it on the record, what is the relief that you're seeking? We're asking for reversal of each of the convictions, an outright reversal on the sufficiency grounds of the two — the two residential burglary convictions. And if that doesn't occur, then a finding of merger and vacater of the home invasion conviction, because that's a lesser penalty compared to the home sexual assault, Your Honor. Thank you. Okay. Thank you, counsel, for a very interesting case, to say the least, and well-argued matter as well. The court will take it under advisement, and the court is adjourned.